UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL MASSE,

      Plaintiff,

v.                                                    CASE NO.:

MEDICAL SERVICES OF                    **DEMAND FOR TRIAL BY JURY**
CHATTANOOGA, INC. d/b/a PATIENT
FINANCIAL SERVICES, INC., AND
FLORIDA HOSPITAL HEALTHCARE
SYSTEM, INC.

      Defendant.

_____/

## COMPLAINT

Plaintiff, Michael Masse (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendants, Medical Services of Chattanooga, Inc. d/b/a Patient Financial Services, Inc. and Florida Hospital Healthcare System Inc. (hereinafter "Defendants"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1.     The TCPA was enacted to prevent companies like Defendants from invading American citizen's privacy and to prevent abusive "robo-calls."

2.     "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.      Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii).  *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

     7.     Venue is proper in this District as Plaintiff was a resident in this District, the violations described in this Complaint occurred in this District, and, Defendants transact business within this District.

## FACTUAL ALLEGATIONS

     8.     Plaintiff is a natural person and citizen of the State of Florida, residing in Flagler County, Florida.

     9.     Plaintiff is a "consumer" as defined in Fla. Stat. § 559.55(8).

     10.     Plaintiff is an "alleged debtor."

     11.     Defendants are collecting an alleged obligation which arises out of personal, family or household transactions.

     12.     The alleged debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute § 559.55(6), as it arises from personal, family or household transactions.

     13.     Plaintiff is the "called party."  See Breslow v. Wells Fargo Bank, N.A., 755 F. 3d 1265 (11th Cir. 2014) and Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. 2014).

     14.     Defendants are corporations responsible for attempting to collect an alleged consumer debt from Plaintiff.

     15.     Defendant Medical Services of Chattanooga, Inc. d/b/a Patient Financial Services, Inc. is a corporate entity with its principal place of business located at 2810

Walker Road, Suite 100, Chattanooga, Tennessee 37421, and which conducts business within the State of Florida.

16.     Defendant Florida Hospital Healthcare System, Inc. is a corporate entity with its principal place of business located at 602 Courtland Street, Suite 310, Orlando, Florida 32804, and which conducts business within the State of Florida.

17.     Defendant Medical Services of Chattanooga, Inc. d/b/a Patient Financial Services, Inc. is a corporate entity that serves as the billing services for Defendant Florida Hospital Healthcare System, Inc.

18.     Defendant Florida Hospital Healthcare System, Inc. retains the services of Medical Services of Chattanooga, Inc. d/b/a Patient Financial Services, Inc. to collect debts on its behalf.

19.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue in this action, (386) XXX-1855 (hereinafter "cellular telephone"), and was the called party and recipient of Defendant's hereinafter described calls.

20.     Defendants intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, beginning in 2012 through March 2016, with such frequency as can reasonably be expected to harass and in effort to collect upon an alleged debt.

21.     Defendants' calls to Plaintiff continued, on average, once per day.

22.     Upon information and belief, some or all of the calls Defendants placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers

to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

23.   Furthermore, each of the calls at issue were placed by Defendants using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

24.   Beginning in or about 2012, Defendants began bombarding Plaintiff's cellular telephone in attempt to collect an alleged debt.

25.   Upon receipt of the calls, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, the phone numbers 800-851-9631 and 800-737-9140.

26.   At all material times hereto, Defendants were attempting to collect a consumer debt owed by "Francis Reynolds," an individual other than Plaintiff.

27.   Upon Plaintiff's receipt of one such call from Defendants, in or about 2012, Plaintiff answered the call, received Defendants' artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all calls to his cellular telephone and that he is not "Francis Reynolds;" furthermore, Plaintiff informed Defendants' aforementioned agent/representative that its incessant calls were harassing him and demanded Defendants to immediately cease all calls to his cellular telephone; thereby, unequivocally revoking any previously perceived expressed consent to be called using Defendants' Autodialer, predictive dialer, artificial voice or prerecorded message.

28.    During the aforementioned phone conversation with Defendants' agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent Defendants may have believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an Autodialer or artificial voice or prerecorded message.

29.    Each subsequent call Defendants placed to Plaintiff's cellular telephone was done so after he revoked consent and without the express consent of Plaintiff.

30.    Each subsequent call Defendants placed to Plaintiff's cellular telephone was knowingly and willfully placed to his cellular telephone without express consent.

31.    On multiple occasions, Plaintiff informed Defendants to immediately cease calling his cellular telephone; however, despite these attempts, Defendants' calls to Plaintiff's cellular telephone continued.

32.    Defendants called Plaintiff on his cellular telephone in excess of eight hundred (800) times since 2012 in attempt to collect an alleged debt.

33.    Due to the extreme volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call he received from Defendants; however, the following is a sample of calls Plaintiff received from December 2015 through February 2016:

     i.    One call on December 14, 2015 at 3:45 p.m.;

     ii.    One call on December 18, 2015 at 7:33 p.m.;

     iii.    Two calls on December 19, 2015 at 11:00 a.m. and 12:36 p.m.;

     iv.    One call on January 6, 2016 at 10:32 a.m.;

    v.  One call on January 11, 2016 at 11:30 a.m.;

   vi.  One call on January 14, 2016 at 7:18 p.m.;

  vii.  One call on January 19, 2016 at 12:17 p.m.;

 viii.  One call on January 25, 2016 at 6:02 p.m.;

   ix.  One call on January 30, 2016 at 11:17 a.m.;

    x.  One call on February 3, 2016 at 2:28 p.m.;

   xi.  One call on February 4, 2016 at 11:23 a.m.;

  xii.  One call on February 15, 2016 at 6:35 p.m.;

 xiii.  One call on February 19, 2016 at 7:19 p.m.;

 xiv.  One call on February 20, 2016 at 11:32 a.m.;

  xv.  One call on February 22, 2016 at 5:47 p.m.;

 xvi.  One call on February 23, 2016 at 2:15 p.m.; and

 xvii.  One call on February 24, 2016 at 1:13 p.m.

34.    Defendants have, or should be in possession and/or control of, call logs, account notes, Autodialer reports and/or other records that detail the exact number of calls it placed to Plaintiff.

35.    Despite actual knowledge of its wrongdoing, Defendants continued its campaign of abuse by continuing to call Plaintiff despite not having Plaintiff's express consent to call her cellular telephone.

36.    Defendants have corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of

the calls, including Defendants, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendants' call list.

37.     The structure of Defendants' corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendants may have believed it had to place such calls.

38.     Defendants' corporate policies and procedures provided no means for Plaintiff to have her cellular number removed from Defendants' call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendants.

39.     Defendants have corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for its financial benefit.

40.     Defendants have numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

41.     Defendants have numerous complaints against it, across the country, asserting that its Autodialer continues to call individuals who have revoked consent to be called by Defendants.

42.     Defendants knowingly employ methods and/or have corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

43.     Defendants knowingly employ methods that do not permit the cessation or suppression of autodialed calls to Plaintiff's cellular telephone.

44.     None of Defendants' telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

45.     For each call Defendants placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular telephone unavailable for legitimate incoming or outgoing calls.

46.     For each call Defendants placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered calls was unnecessary because he repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

47.     Each and every call Defendants placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

48.     Each and every call Defendants placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

49.     As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy. Plaintiff also suffered from stress, anxiety, nervousness, intimidation,

indignation, and emotional and mental distress. Additionally, Plaintiff experienced loss of happiness, concentration, sleep, and privacy. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendants' attempts to collect a consumer debt allegedly owed by Plaintiff.

### COUNT I
**(Violation of the TCPA)**

50.     Plaintiff incorporates and realleges paragraphs one (1) through forty-nine (49) as if fully set forth herein.

51.     Defendants willfully violated the TCPA with respect to Plaintiff, especially for each of the Autodialer calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendants that he wished for the calls to immediately cease.

52.     Defendants repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

**Count II**
**(Vicarious Liability – Defendant Florida Hospital Healthcare System, Inc.)**

53.     Plaintiff incorporates and realleges paragraphs one (1) through forty-nine (49) as if fully set forth herein.

54.     At all material times hereto, Medical Services of Chattanooga, Inc. d/b/a Patient Financial Services, Inc. acted as an employee, agent, or an apparent agent of Florida Hospital Healthcare System, Inc. to collect an alleged consumer debt on Florida Hospital Healthcare System Inc.'s behalf.

55.     Medical Services of Chattanooga, Inc. d/b/a Patient Financial Services, Inc.  performed the actions described in paragraphs one (1) through forty-nine (49) to further the interests of Florida Hospital Healthcare System Inc.

56.     At all material times hereto, Florida Hospital Healthcare System Inc. through its employees, agents, apparent agents, and/or other persons acting to further the interests of Florida Hospital Healthcare System, Inc. breached the statutory duties described in paragraphs one (1) through forty-nine (49) herein by failing to utilize a reasonable level of care and skill when attempting to collect an alleged consumer debt.

57.     As a direct result of conduct described herein, Plaintiff suffered the injuries and damages described herein.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

_____
Jared M. Lee, Esquire
Florida Bar No #:  0052284
Morgan & Morgan, Tampa P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32801
Tele:  (407) 420-1414
Fax:  (407) 245-3485
JLee@ForThePeople.com
KVanBuskirk@ForThePeople.com
MHoilett@ForThePeople.com
Counsel for Plaintiff